## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Katherine R. Walters on behalf of L.W., individually, and on behalf of all others similarly situated, | **Case No.: 25-cv-677** |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| ByteDance, Inc.; ByteDance, Ltd.; TikTok, Ltd.; TikTok, Inc.; TikTok Pte. Ltd.; and TikTok U.S. Data Security, Inc., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Katherine R. Walters on behalf of L.W. ("Plaintiff") brings this Class Action Complaint against Defendants ByteDance, Inc.; ByteDance, Ltd.; TikTok, Ltd.; TikTok, Inc.; TikTok PTE. Ltd.; and TikTok U.S. Data Security, Inc. ("Defendants" or "TikTok"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsel's investigation, and upon information and belief as to all other matters, as follows:

## STATEMENT OF FACTS

1.    Plaintiff brings this class action against Defendants for its failure to disclose that it collects and sells personally identifiable information ("Personal Information") of millions of minor children, without the consent of the minors or their parents, including, but not limited to: name, age, profile image, password, email, phone number, address,

"approximate" location, social media account information, phone and social media contacts, messages sent to and received from other TikTok users, information in the clipboard of a user's device, and payment card numbers.

2.      Upon information and belief, TikTok collects and sells access to this personal data without the minors' or their parents' notice, knowledge, or consent.

**A.    The Children's Online Privacy Protection Act and the COPPA Rule Require That TikTok Provide Parental Notice and Gain Parental Consent Before Collecting or Using Children's Personal Information.**

3.      TikTok collects and uses children's Personal Information without providing direct notice to their parents or gaining their parents' verifiable consent, in violation of the Children's Online Privacy Protection Act of 1998 ("COPPA") and the Children's Online Privacy Protection Rule ("Rule" or "COPPA Rule"), a federal statute and regulation that protect children's privacy and safety online.

4.      By collecting and using children's Personal Information in violation of COPPA and the COPPA Rule, TikTok also defies an order entered by the United States District Court of the Central District of California in 2019 to resolve a lawsuit in which the United States alleged that TikTok Inc.'s and TikTok Ltd.'s predecessor companies similarly violated COPPA and the COPPA Rule by allowing children to create and access accounts without their parents' knowledge or consent, collecting data from those children, and failing to comply with parents' requests to delete their children's accounts and information.

5.      TikTok continues to violate COPPA. Last month, the Department of Justice filed a new lawsuit against TikTok for violating COPPA and illegally collecting and using

young children's Personal Information. *See United States v. Bytedance, Ltd., et. al*. (Case

No. 2:24-cv-06535-ODW-RAO) (C.D. Cal.) (J. Wright).

6.      Congress passed COPPA, codified at 15 U.S.C. § 6501, et seq., in 1998 in

response to concerns that children's online activities were being tracked by website

operators and online services. COPPA is intended to "maintain the security of personally

identifiable information of children collected online" and to "protect children's privacy by

limiting the collection of personal information from children without parental consent."

144 Cong. Rec. S12787.

7.      The COPPA Rule sets requirements for any "operator of a Web site or online

service directed to children, or any operator that has actual knowledge that it is collecting

or maintaining Personal Information from a child [under the age of 13]." 16 C.F.R. § 312.3.

8.      The COPPA Rule requirements apply to TikTok. TikTok is directed to

children, and TikTok has actual knowledge that it is collecting Personal Information from

children.

9.      The COPPA Rule has two requirements that are pertinent to this case: (1)

parental notice and (2) parental consent.

10.     First, pursuant to the COPPA Rule, TikTok must provide direct notice to

parents, notifying them of "what information it collects from children, how it uses such

information, and its disclosure practices for such information." 16 C.F.R. §§ 312.3(a),

312.4(b).

11.    Second, pursuant to the COPPA Rule, TikTok must "[o]btain verifiable parental consent prior to any collection, use, and/or disclosure of Personal Information from children." 16 C.F.R. §§ 312.3(b), 312.5.

12.    The COPPA Rule defines "Personal Information," as "individually identifiable information about an individual collected online," including:

- "A first and last name;

- A home or other physical address including street name and name of a city or town;

- Online contact information as defined in this section;

- A screen or user name where it functions in the same manner as online contact information, as defined in this section;

- A telephone number;

- A Social Security number;

- A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

- A photograph, video, or audio file where such file contains a child's image or voice;

- Geolocation information sufficient to identify street name and name of a city or town; or

- Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition."

16 C.F.R. § 312.2.

13.    Plaintiff uses the same definition of "Personal Information" from Section 312.2 of the COPPA Rule for this Complaint.

14.    The COPPA Rule defines "Child" as "an individual under the age of 13." 16 C.F.R. § 312.2. References herein to "child" or "children" mean "an individual under the age of 13" unless otherwise noted.

**B.    TikTok has Repeatedly and Persistently Violated COPPA and Otherwise Collected the Personal Information of Minors Without Notice to, Or Consent of, Parents.**

15.    TikTok's predecessor Musical.ly launched in 2014. Musical.ly was a social media platform where users could create and share short lip-sync videos.

16.    By 2016, New York Times tech reporter John Herrman wrote an article about the prevalence of young children on Musical.ly, explaining that "[w]hat is striking about the app, though, is how many of its users appear to be even younger than [13]."[1]

17.    Mr. Herrman wrote:

The app does not collect or show the age of its users, but some of its top-ranked users, whose posts routinely collect millions of likes, called hearts, appear from their videos and profile photos to be in grade-school. Until recently, the app had a feature that suggested users to follow based on their location. In New York, that feature revealed a list composed largely not just of teenagers, but of children.[2]

18.    The CEO of a social media advertising agency told the New York Times that with Muscial.ly users, "you're talking about first, second, third grade."[3]

---

[1] Josh Herrman, Who's Too Young for an App? Musical.ly Tests the Limits, New York Times, Sept. 16, 2016, https://www.nytimes.com/2016/09/17/business/media/a-social-network-frequented-by-children-tests-the-limits-of-online-regulation.html.
[2] *Id*.
[3] *Id*.

19.    As Musical.ly was gaining popularity among elementary school kids in the United States, Beijing-based ByteDance Ltd. created TikTok in 2017. On November 9, 2017, ByteDance Ltd. purchased Musical.ly for almost $1 billion. On August 2, 2018, TikTok merged with Musical.ly, consolidating the accounts and data into one application.

20.    In February 2019, the United States Department of Justice filed a complaint against TikTok's predecessors, Musical.ly and Musical.ly, Inc., alleging violations of the COPPA Rule and Section 5 of the FTC Act, 15 U.S.C. § 45.

21.    The Department of Justice alleged that TikTok's predecessors—Musical.ly and Musical.ly, Inc.—had collected and used Personal Information from children younger than 13 in violation of COPPA, including by (1) failing to directly notify parents of the information it collects online from children under 13 and how it uses such information and (2) failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13. *United States v. Musical.ly, et al.*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Feb. 27, 2019) (Dkt. No. 1).

22.    In March 2019, the Honorable Otis D. Wright II entered a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief against TikTok's predecessors. *Id.* at Dkt. No. 10 ("2019 Permanent Injunction").

23.    As part of the 2019 Permanent Injunction, TikTok's predecessors were enjoined from violating the COPPA Rule, including by (1) "failing to make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of Defendants' practices with regard to the collection, use, or disclosure of Personal Information from children" and (2) "failing to obtain verifiable parental consent

before any collection, use, or disclosure of Personal Information from children." 2019 Permanent Injunction at 8.

24.     In 2019, Muiscal.ly was renamed TikTok Ltd., and Musical.ly Inc. was renamed TikTok Inc. This renaming did not change the companies' obligations under the 2019 Permanent Injunction.

**C.     Despite the Permanent Injunction, TikTok Continues to Collect and Use Children's Personal Information Without Parental Notification or Consent.**

25.     Despite the 2019 Permanent Injunction, millions of American minors, particularly children under the age of 13, continue to join TikTok. And TikTok continues to collect and use their Personal Information.

26.     When users create a TikTok account, TikTok uses an "age gate" and requires that the user provide their birthday – the day, month, and year.

27.     Since at least March 2019, if a child enters a birthday that indicates that they are 13 years old or over, then they are provided with a regular TikTok account.

28.     Since at least March 2019, if a child enters a birthday that indicates that they are younger than 13 years old, then they are provided with a "TikTok For Younger Users" or "Kids Mode" account. TikTok does not notify parents or obtain parental consent for Kids Mode accounts.

29.     Children with Kids Mode accounts can view videos but cannot post videos.

30.     TikTok's "age gate" is insufficient. Other than asking for their birthday, TikTok makes no other attempt during the sign-in process to verify the user's age.

31.    TikTok and its employees have long known that children misrepresent their ages to pass through TikTok's age gate, and that despite other measures purportedly designed to remove children from the platform, children are ubiquitous.

32.    TikTok's internal company data and documents classified 18 million of its 49 million daily users in the United States as being 14 years or younger.[4]

33.    A former TikTok employee said that TikTok employees had pointed out videos from children who appeared to be younger than 13 that were allowed to remain online for weeks.[5]

34.    Defendants use human content moderators to review flagged accounts that potentially belong to children. In January 2020, for example, a TikTok moderator recognized that Defendants maintain accounts of children despite the "fact that we know the user is U13," *i.e.*, under the age of 13, so long as the child's profile does not admit that fact explicitly.

35.    Another employee admitted that TikTok moderators were required to ignore any "external information" indicating that a user under review is a child.

36.    As another example, in a July 2020 chat, one of Defendants' employees circulated the profiles of numerous underage users he had identified "literally through one minute of scanning," noting "[t]his is incredibly concerning and needs to be addressed immediately."

---

[4] Raymond Zhong & Sheera Frenkel, A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions, New York Times, Aug. 14, 2020, https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.
[5] *Id.*

37.    TikTok utilizes internal algorithms to predict user's ages based on their online behavior. However, despite the availability of these age-prediction algorithms, TikTok refuses to use them to identify children under the age of 13 and stop them from using regular TikTok accounts.

38.    Furthermore, until at least May 2022, TikTok allowed consumers to avoid the age gate when creating a TikTok account by allowing consumers to use login credentials from certain third-party online services, including Instagram and Google. Children were permitted to create TikTok accounts without entering their birthday if they used login credentials from Google. However, Google allowed children under the age of 13 to create Google accounts with parental consent to use Google.

39.    Regardless of whether a Child uses a regular TikTok account or a Kids Mode account, TikTok violates the COPPA Rule by collecting and using their Personal Information without parental notice and consent.

40.    TikTok's insufficient age verification policies resulted in millions of children gaining access to regular TikTok accounts and to the adult content and features of a regular TikTok account.

41.    For children with regular TikTok accounts, TikTok collects Personal Information about them, including first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device

9

information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

42.    For children with Kids Mode accounts, TikTok still collects Personal Information about them, including several types of persistent identifiers, including IP address and unique device identifiers. TikTok also collects app activity data, device information, mobile carrier information, and app information from children using Kids Mode accounts—which it combines with persistent identifiers and uses to amass profiles on children.

43.    In August 2024, the Department of Justice filed a new complaint alleging that TikTok violated COPPA and the COPPA Rule, including by (1) knowingly creating accounts for children and collecting data from those children without first notifying their parents and obtaining verifiable parental consent; (2) failing to honor parents' requests to delete their children's accounts and information; and (3) failing to delete the accounts and information of users it knows are children.

**D. TikTok Generates Revenue from Its Unlawful Conduct by Advertising to Children.**

44.    TikTok is a short-form video social media platform.

45.    In January 2024, TikTok reported that it had approximately 170 million monthly active users in the United States.

46.    TikTok earns a substantial amount of its revenue from advertising.

47.    TikTok reported that it earned $16 billion in revenue in the United States in 2023.

48.     TikTok uses the Personal Information collected from children to target them with advertising.

49.     TikTok targets users with specific advertisements by collecting persistent identifiers about the users and combining the identifiers with other information about the users.

50.     In other words, TikTok targets specific advertisements to children by violating COPPA. Thus, a substantial portion of the revenue that TikTok earns from advertisements that are served on children is a direct and proximate result of TikTok's violation of COPPA.

51.     TikTok's algorithm is trained on data collected from users via the TikTok platform and from third-party sources. Such data include videos viewed, "liked," or shared, accounts followed, comments, content created, video captions, sounds, and hashtags, as well as device and account settings such as language preference, country setting, and device type.

52.     TikTok combines this collected data with children's persistent identifiers. The collected data is thus Personal Information. 16 C.F.R. § 312.2.

53.     TikTok also provides targeting options to advertisers that are based on this collected Personal Information.

54.     For example, for behavioral targeting, TikTok targets users based on their interactions with organic and paid content, including the types of videos the user viewed.

55.     For interest targeting, TikTok's algorithm analyzes users' long-term platform activities.

### E.  Defendants Operate Under a Common Enterprise.

56.     Defendants are a series of interconnected companies that operate the TikTok social media platform. Defendant ByteDance Ltd. is the parent and owner of Defendants ByteDance, Inc. and TikTok Ltd. TikTok Ltd. owns Defendants TikTok LLC and TikTok Pte. Ltd. TikTok LLC in turn owns Defendant TikTok Inc., which owns Defendant TikTok U.S. Data Security Inc.

57.     Upon information and belief, a group of ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Penyuan, and Zhu Wenjia, direct and control TikTok's core features and development. Since 2019, ByteDance Ltd. and TikTok Inc. have promoted TikTok in the United States, spending hundreds of millions of dollars on advertising, employing U.S.-based staff and executives, and developing and distributing TikTok to run on Apple and Android devices.

58.     ByteDance Inc. and TikTok Inc. have responsibilities for developing, providing, and supporting TikTok in the United States.

59.     TikTok Pte. Ltd. serves as the U.S. distributor of TikTok through the Apple App Store and Google Play Store.

60.     TikTok Ltd. identifies itself as the developer of TikTok in the Apple App Store, and TikTok Pte. Ltd. identifies itself as the developer of TikTok in the Google Play Store. The tiktok.com domain is registered to TikTok Ltd.

61.     Beginning in 2023, TikTok Inc. transferred Personal Information of children to TikTok U.S. Data Security Inc., which has maintained that data without notice to those children's parents or parental consent.

62.    Defendants share officers and directors. For example, TikTok Inc.'s chief executive officers between 2020 and the present (Kevin Mayer, V Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s chief executive officers (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, also served as cyber risk and data security support for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc. Defendants intertwine their finances; for example, ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO, and TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan.

63.    Defendants have one centralized bank account for ByteDance Ltd.'s more than a dozen products, including TikTok. Defendants operate on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. ByteDance's largest shareholder, Zhang Yiming, signed the 2019 consent order with the United States on behalf of Musical.ly, TikTok Ltd.'s predecessor company.

64.    Defendants have operated as a common enterprise while engaging in the unlawful acts and practices alleged below.

## JURISDICTION & VENUE

65.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332(d)(2), because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive

of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

66.    Defendants are each subject to personal jurisdiction in this district because they have substantial aggregate contacts throughout the United States and the state of Minnesota. Defendants have engaged, and continue to engage, in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, the state of Minnesota, and this District, and they purposely availed themselves of the laws of the United States and the State of Minnesota.

67.    Defendants are each subject to personal jurisdiction in this District because they purposely avail themselves of the privilege of conducting activities in the United States and the State of Minnesota and direct business activities toward consumers throughout the United States and the State of Minnesota. Furthermore, Defendants engaged and continue to engage in conduct that has a foreseeable, substantial effect throughout the United States, the State of Minnesota, and this District connected with its unlawful acts.

68.    Venue is proper in this District under 28 U.S.C §1391(b) because Plaintiff and thousands of potential Class Members reside in this District; Defendants transact business in this District; and Defendants intentionally avail themselves of the laws within this District.

## PARTIES

69.     **Plaintiff Katherine R. Walters** is the mother of L.W., age 11, a child who used the TikTok mobile application (hereinafter "TikTok").  Plaintiff and her minor child are citizens of the state of Minnesota.  At all relevant times, Plaintiff and her minor child have been residents of Little Falls, Minnesota.

70.     During the Class Period, L.W. created and used a TikTok account and viewed content on the TikTok platform.

71.     L.W. created a TikTok account at approximately 9 years old.

72.     During the Class Period, Defendants collected L.W.'s Personal Information for the purpose of tracking his activity and utilizing targeted advertisements.

73.     Defendants never obtained consent from nor notified L.W.'s parent and legal guardian, Katherine Walters, at any point prior to or during its collection and use of L.W.'s Personal Information.

74.     Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

75.     **Defendant TikTok Inc**. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok Inc. transacts or has transacted business in this District and throughout the United States.

76.     **Defendant TikTok U.S. Data Security Inc.** is a Delaware corporation with its principal place of business shared with TikTok Inc. TikTok U.S. Data Security Inc. transacts or has transacted business in this District and throughout the United States.

77.     **Defendant ByteDance Ltd.** is a Cayman Islands company. It has had offices in the United States and in other countries. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

78.     **Defendant ByteDance Inc**. is a Delaware corporation with its principal place of business at 250 Bryant Street, Mountain View, California, 94041. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

79.     **Defendant TikTok Pte. Ltd.** is a Singapore company with its principal place of business at 8 Marina View Level 43 Asia Square Tower 1, Singapore, 018960. TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

80.     **Defendant TikTok Ltd.** is a Cayman Islands company with its principal place of business in Singapore or Beijing, China. TikTok Ltd. Transacts or has transacted business in this District and throughout the United States.

## CLASS ALLEGATIONS

81.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

82.     The Classes that Plaintiff seeks to represent are defined as follows:

**Nationwide Class**

All United States residents (who were younger than 13 years old when they used
TikTok) from whom Defendants collected and/or used Personal Information during
the Class Period without notifying their parents and obtaining verifiable parental
consent beforehand (the "Class").

**Minnesota Subclass**

All Minnesota residents (who were younger than 13 years old when they used
TikTok) from whom Defendants collected and/or used Personal Information during
the Class Period without notifying their parents and obtaining verifiable parental
consent beforehand (the "Minnesota Subclass").

83.    Collectively, the Class and Minnesota Subclass are referred to as the
"Classes" or "Class Members."

84.    Excluded from the Classes are the following individuals and/or entities:
Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any
entity in which Defendants has a controlling interest; all individuals who make a timely
election to be excluded from this proceeding using the correct protocol for opting out; and
all judges assigned to hear any aspect of this litigation, as well as their immediate family
members.

85.    Plaintiff reserves the right to amend the definitions of the Classes or add a
Class or Subclass if further information and discovery indicate that the definitions of the
Classes should be narrowed, expanded, or otherwise modified.

86.    <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all
members is impracticable, if not completely impossible. While the exact number of Class
Members is unknown to Plaintiff at this time, and such number is exclusively in the
possession of Defendants, upon information and belief, millions of minor individuals,
including children, are implicated.

17

87.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, include the following:

   a.  Whether TikTok has or had a practice of collecting Personal Information from children who were younger than 13 years old without notifying their parents and obtaining verifiable parental consent beforehand;

   b.  Whether TikTok has or had a practice of using Personal Information from children who were younger than 13 years old without notifying their parents and obtaining verifiable parental consent beforehand;

   c.  Whether TikTok's practices violate the Children's Online Privacy Protection Act of 1998 ("COPPA") and the Children's Online Privacy Protection Rule ("COPPA Rule");

   d.  Whether TikTok engaged in unlawful business practices;

   e.  Whether TikTok engaged in unfair business practices;

   f.  Whether TikTok has unjustly received and retained monetary benefits from Plaintiff's minor child and Class Members by profiting off the use of their Personal Information; and

   g.  Whether Class Members are entitled to damages and/or restitution, and if so, the method of computing damages and/or restitution.

88.     Typicality: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of law as each other member of the Classes.

89.     Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform

relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

90.     <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members, and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

91.     <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who

could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

92.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

93.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

94.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

95.     Unless a Class-wide injunction is issued, Defendants may continue to act unlawfully as set forth in this Complaint.

96.    Further, Defendants have acted on grounds that apply generally to the
Classes as a whole, so that class certification, injunctive relief, and corresponding
declaratory relief are appropriate on a class- wide basis.

## CAUSES OF ACTION

### COUNT 1: UNJUST ENRICHMENT
*(On behalf of Plaintiffs and the Classes)*

97.    Plaintiff re-alleges and incorporates by reference all the allegations contained
in the foregoing paragraphs as if fully set forth herein.

98.    By obtaining and reselling Plaintiff's and Class Members' Personal
Information, Defendants received a monetary benefit. Defendants knew that they could sell
the Personal Information for financial gain and have retained that benefit.

99.    Defendants have unjustly received and retained monetary benefits from
Plaintiff and Class Members by profiting off the use of their Personal Information under
unjust circumstances such that inequity has resulted.

100.    Defendants have knowingly obtained benefits from Plaintiff and Class
Members as alleged herein under circumstances such that it would be inequitable and
unjust for Defendants to retain them.

101.    Defendants have been knowingly enriched by revenues and profits they
received from unjustly and illegally collecting and using the Personal Information of
children under the age of 13 to build profiles and target advertisements to those children.

102.    Defendants have failed to obtain legally valid consent from Plaintiff and the
Class Members and to collect and use Personal Information.

103.    Defendants will be unjustly enriched if they are permitted to retain the benefits derived from the illegal collection and usage of Plaintiff's and Class Members' Personal Information.

104.    Plaintiff and Class Members are therefore entitled to relief, including disgorgement of all revenues and profits that Defendants earned as a result of their unlawful and wrongful conduct.

## COUNT 2: INVASION OF PRIVACY/INTRUSION UPON SECLUSION
### (*On behalf of Plaintiffs and the Classes*)

105.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

106.    As minor children, Plaintiff and Class Members had a legitimate expectation of privacy in their Personal Information. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

107.    Defendants owed a duty to Plaintiff and Class Members to keep their Personal Information confidential.

108.    Defendants collected and disclosed Plaintiff's and Class Members' Personal Information without the Plaintiff's and Class Members' authorization and in violation of the law.

109.    Defendants permitted the public disclosure of Plaintiff's and Class Members' Personal Information to unauthorized third parties.

110.    The Personal Information that was collected and disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and

confidential. The public disclosure of the type of Personal Information at issue here was substantial and would be highly offensive to a reasonable person of ordinary sensibilities.

111.    By permitting the unauthorized collection and disclosure of Personal Information, Defendants acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the Personal Information at issue was not newsworthy or of any service to the public interest.

112.    Defendants acted with such reckless disregard as to the safety of Plaintiff's and Class Members' Personal Information to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

113.    Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

### COUNT 3: VIOLATION OF THE MINNESOTA PROTECTION OF CONSUMER FRAUD ACT (Minn. Stat. § 325F.68-325F.70, *et. seq.*) (*On behalf of Plaintiff and the Minnesota Subclass*)

114.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

115.    Plaintiff brings this claim individually and on behalf of the Minnesota Subclass.

116.    Plaintiff and members of the Minnesota Subclass are residents of Minnesota and used TikTok while under the age of 13.

117.    Defendants' actions are governed by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. § 325F.68, *et seq.*.

118.    Under the MPCFA, it is unlawful for any person to commit "a fraud, false pretense, false promise, misrepresentation, misleading statement, or deceptive practice with the intent that others rely thereon in connection with sale of any merchandise." Minn. Stat. § 325F.69, subd. 1.

119.    Plaintiff and the Minnesota subclass members are considered "persons" for the purpose of the MPCFA. Minn. Stat. § 325F.68, subd. 3.

120.    Defendants each engaged in the advertising, offering for sale, sale, and attempt to sell articles, commodities, intangibles, services, or things of value in Minnesota. Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app and social media platform.

121.    As outlined herein, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect their Personal Information for substantial commercial gain.

122.    After entering into a Permanent Injunction with the United States in 2019 that was intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other deceptive practices, implementation of a woefully inadequate age-gating system and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the Personal Information of children for substantial commercial gain.

123.    Defendants committed fraud, false pretenses, false promises, misrepresentations, misleading statements and omissions, or deceptive practices, including but not limited to the following:

- Knowingly allowing or facilitating millions of children to access regular TikTok accounts and the adult content and features of a regular TikTok account through a woefully inadequate age-gating system and deficient monitoring policies and procedures designed to present an appearance that they were identifying children under age 13, but in reality, allowing the knowing and continued collection and use of the Personal Information of children;

- Falsely representing the characteristics of TikTok Kids Mode by representing that it was designed for children under 13, while in fact TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by allowing Defendants to collect and use their Personal Information without providing direct notice to their parents or obtaining parental consent;

- Fully aware that a significant portion of TikTok users were under the age of 13, systematically collecting, using, and/or disclosing Personal Information of those children without providing direct notice to their parents or obtaining parental consent and for the purpose of serving those children behavioral advertising for substantial commercial gain;

- Failing to disclose that Defendants were systematically collecting and disseminating the private Personal Information of children under 13 without parental notice or consent and in violation of COPPA;

- Failing to provide sufficient notice or disclosure to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA;

- Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA; and

- Failing to disclose that Defendants had not established or maintained reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA.

124. Defendants did so with the intent that others rely on such acts or omissions, whether or not any person was in fact misled.

125. Defendants did so in connection with the sale of merchandise.

126. Defendants thereby violated and continue to violate the MPCFA.

127. Consumers like Plaintiff and the Minnesota Subclass did not know that they were giving their Personal Information to Defendants or that Defendants were failing to safeguard such Personal Information. Such information is important to consumers,

including Plaintiff and the Minnesota Subclass, because disclosure of Personal Information creates a substantial risk of future identity theft, fraud, or other forms of exploitation.

128.    Conversely, Defendants at all times had actual knowledge of their noncompliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the Personal Information of Plaintiff and Minnesota Subclass members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

129.    Defendants had special knowledge of material facts that Plaintiff and the Minnesota Subclass did not have access to, triggering a duty to disclose. Defendants owed a duty to Plaintiff and Class Members to disclose material facts with respect to Plaintiff's and Minnesota Subclass's Personal Information, including that they were systematically collecting, using, and disclosing Personal Information of children under 13 for substantial commercial gain and without parental consent and were failing to safeguard such Personal Information.

130.    Defendants failed to disclose any such material information about its collection, use, and disclosure of Plaintiff's and the Minnesota Subclass's Personal Information.

131.    Plaintiff and members of the Minnesota Subclass relied on Defendants' actions and omissions.

132.    Plaintiff and members of the Minnesota Subclass were injured by Defendants' conduct and practices described herein, which were a substantial factor and

caused injury in fact and actual damages to Plaintiff and members of the Minnesota Subclass. There is a causal nexus between Defendants' violation of the MPCFA and Plaintiff's and the Minnesota Subclass's damages.

133.    As a direct and proximate result of Defendants' unlawful and deceptive acts and practices in violation of Minn. Stat. § 325F.69, Plaintiff and members of the Minnesota Subclass have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of Plaintiff and members of the Minnesota Subclass.

134.    As outlined herein, there is tangible value in Plaintiff's and members of the Minnesota Subclass's Personal Information. Due to Defendants' unlawful and deceptive acts and practices—including but not limited to its failure to disclose that Defendants were systematically collecting Personal Information of children without requisite parent consent and using and disclosing that Personal Information for their monetary gain— Plaintiff and members of the Minnesota Subclass have lost the opportunity to receive value in exchange for their Personal Information.

135.    Defendants' monetization of Plaintiff's and members of the Minnesota Subclass's Personal Information demonstrates that there is a market for their Personal Information. Plaintiff's and members of the Minnesota Subclass's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

136.    Because Defendants' misconduct is ongoing and continuing, prospective injunctive relief is necessary. Absent injunctive relief, Defendants may continue to collect children's Personal Information while failing to adequately safeguard such Personal Information.

137.    Plaintiff and members of the Minnesota Subclass could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

138.    There is a public benefit in holding Defendants liable for their fraudulent, misleading, and deceptive actions. Defendants directed their numerous misleading statements and omissions and deceptive practices with respect to the unlawful collection, use, and disclosure of Personal Information of children at the consuming public across the state. Defendants' fraudulent, misleading, and deceptive actions significantly impacted the public because TikTok is used nationwide, including in Minnesota, and there are millions of users, including Plaintiff and members of the Minnesota Subclass. Defendants' retention of Plaintiff's and members of the Minnesota Subclass's Personal Information presents a continuing risk to them as well as to the general public.

139.    In accordance with Minn. Stat. §§ 325F.69 and 325F.70, and as authorized by Minn. Stat. § 8.31, subd. 3a, Plaintiff and members of the Minnesota Subclass seek relief for the injuries they have suffered as a result of Defendants' unlawful acts and deceptive practices, including all actual damages, attorneys' fees and costs, and restitution, as well as an injunction requiring Defendants to each permanently delete,

destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief, including enjoining Defendants from continuing its conduct in violation of the MPCFA.

### COUNT 4: VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT (Minn. Stat. § 325D.43, *et. seq.*) (*On behalf of Plaintiff and the Minnesota Subclass*)

140.   Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

141.   Plaintiff brings this claim individually and on behalf of the Minnesota Subclass.

142.   Defendants' actions are governed by the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.43, *et seq*.

143.   Under the MDTPA, it is a deceptive trade practice to "represent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," or to "engage in any conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat.§ 325D.44, subd. 1(5), (13).

144.   As outlined herein, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect their Personal Information for substantial commercial gain.

145.   Defendants represented that TikTok has uses and characteristics that it does not having by representing that TikTok Kids Mode was designed for children under 13,

30

while in fact TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by allowing Defendants to collect and use Personal Information of children without providing direct notice to their parents or obtaining parental consent;

146. Defendants represented that TikTok has uses and characteristics that it does not have by representing it was complying with and purporting to comply with a Permanent Injunction with the United States in intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, but all the while knowingly continuing to collect and use the Personal Information of children through implementation of a woefully inadequate age-gating system and monitoring policies and procedures.

147. Defendants otherwise engaged in fraudulent and deceptive conduct which created a likelihood of confusion or misunderstanding related to the characteristics of TikTok, including the following misrepresentations and omissions regarding material facts about Defendants' continued collection and use of Personal Information of children:

- Knowingly allowing or facilitating millions of children to access regular TikTok accounts and the adult content and features of a regular TikTok account through a woefully inadequate age-gating system and deficient monitoring policies and procedures designed to present an appearance that they were identifying children under age 13, but in reality, allowing the knowing and continued collection and use of the Personal Information of children;

- Falsely representing the characteristics of TikTok Kids Mode by representing that it was designed for children under 13, while in fact TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and using their Personal Information without providing direct notice to their parents or obtaining parental consent;

- Fully aware that a significant portion of TikTok users were under the age of 13, systematically collecting, using, and/or disclosing Personal Information of those children without providing direct notice to their parents or obtaining parental consent and for the purpose of serving those children behavioral advertising for substantial commercial gain;

- Failing to disclose that Defendants were systematically collecting and disseminating the private Personal Information of children under 13 without parental notice or consent and in violation of COPPA;

- Failing to provide sufficient notice or disclosure to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA;

- Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA; and

- Failing to disclose that Defendants had not established or maintained reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA.

148. Defendants thereby violated and continues to violate the MDTPA.

149. Plaintiff and members of the Minnesota Subclass were injured by Defendants' conduct and practices described herein, which were a substantial factor and caused injury in fact and actual damages to Plaintiff and members of the Minnesota Subclass.

150. There is a causal nexus between Defendants' violation of the MDTPA and Plaintiff's and the Minnesota Subclass's damages.

151. Plaintiff and the Minnesota Subclass continue to be threatened with damage by Defendants' ongoing violations of the MDTPA. *See* Minn. Stat. § 325D.45, subd. 1. Absent injunctive relief, Defendants may continue to collect children's Personal Information while failing to adequately safeguard such Personal Information.

152. There is a public benefit in holding Defendants liable for their fraudulent, misleading, and deceptive actions. Defendants directed their numerous misleading statements and omissions and deceptive practices with respect to the unlawful collection, use, and disclosure of Personal Information of children at the consuming public across the state. Defendants' fraudulent, misleading, and deceptive actions significantly impacted the public because TikTok is used nationwide, including in Minnesota, and there are millions of users, including Plaintiff and members of the Minnesota Subclass.

Defendants' retention of Plaintiff's and members of the Minnesota Subclass's Personal Information presents a continuing risk to them as well as to the general public.

153.    In accordance with Minn. Stat. § 325D.45, and as authorized by Minn. Stat. § 8.31, subd. 3a, Plaintiff and members of the Minnesota Subclass seek an order (1) enjoining Defendants from continuing its conduction in violation of the MDTPA; (2) requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief for the injuries they have suffered as a result of Defendants' unlawful acts and deceptive practices; and (3) awarding Plaintiff and members of the Minnesota Subclass damages, costs, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Classes and counsel for Plaintiff as Class Counsel;

B.    For an order declaring that the Defendants' conduct violates the statutes and causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and Class Members on all counts asserted herein;

D.    Ordering Defendants to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Classes;

E.    For compensatory damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper, including but not limited to enjoining Defendants from continuing the unlawful practices as set forth herein;

I.    For an order awarding Plaintiff and Class Members their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

CIRESI CONLIN LLP

Dated: February 21, 2025          By: */s/Heather M. McElroy*
                                  Michael A. Sacchet (#0395817)
                                  Heather M. McElroy (#034168X)
                                  225 South Sixth Street, Suite 4600
                                  Minneapolis, MN 55402
                                  Telephone: (612) 361-8200
                                  mas@ciresiconlin.com
                                  hmm@ciresiconlin.com

                                  ATTORNEYS FOR PLAINTIFF